IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ROBERT D. RIGGS, | CV 16-00092-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| CCA, CROSSROADS CORRECTIONAL FACILITY IN SHELBY MONTANA AND ALL EMPLOYEES LISTED IN THIS ACTION, et al., | |
| Defendants. | |

Mr. Riggs initiated this action by filing a Complaint in state court.  The case

was removed by Defendants Corrections Corporation of America ("CCA") and

Crossroads Correctional Center.  (Doc. 1.)  Defendants filed a waiver of reply

pursuant to 42 U.S.C. § 1997e(g) and L.R. 12.1(c).  (Doc. 4.)  Accordingly, the

Court will screen the Second Amended Complaint (Doc. 9)[1] as required by 28

U.S.C. § 1915 and 28 U.S.C. § 1915A.

Dismissal of Mr. Riggs's failure to protect claims against Defendants

Berkebile, Wandler, Bussby, Weaver, Gold, Christians, Stewart, Kenyon, Fender,

---

[1]An "amended pleading supersedes the original pleading."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

Mohart, and CCA, Crossroads Facility is not appropriate at this time.  The Court
will require these Defendants to make an appearance on Mr. Riggs's failure to
protect and negligence claims arising from the November 2015 assault.  In
addition, Assistant Warden Powell must respond to Mr. Riggs's denial of medical
care and negligence claims.

Mr. Riggs failed to correct the deficiencies with regard to his claims arising
in 2007, his denial of medical care claim against Dr. Berdecia, his medical
malpractice claims, and his violation of criminal law claims.  Those claims and
Defendants Berdecia, Stercheo, McDonald, Law, Bear, McDuna, Vantine, Mertz,
Seg. RN's, Seg. Doctor, and Seg. C/O's should be dismissed.

## I.  STATEMENT OF THE CASE

### A.     Parties

Mr. Riggs is a state prisoner currently incarcerated at Montana State Prison
("MSP") in Deer Lodge, Montana.  All allegations raised in the Second Amended
Complaint, however, arose when he was incarcerated at CCC in Shelby, Montana.

Mr. Riggs has not separately listed the Defendants in this matter but rather
states that Defendants are CCA, Crossroads Correctional Facility and "all
employees listed in this action."  Mr. Riggs has named the following CCA
employees in his filings:  Warden McDonald, AW Law, Ron Stercho, Rena Bear,

C/M McDuna, C/M Vantine, Capt. Mertz, Seg. RNs, Seg. Doctors, Seg. C/O's, Warden Berkebile, Chief Bussby, Chief Stewart, C/M Gold, U/M Wandler, U/M Christians, DOC Monitor Kenyon, Lt. Weaver, Sgt. Mohart, Warden Fender, A/W Powell, U/M Wandler, CCA Dentist, CCA Medical staff, A/W Powell, and Dr. Berdecia.

### B.    Facts

Mr. Riggs was housed on the C-pod at CCC in February 2007.  He alleges he was assaulted several times while housed in that unit.  He repeatedly asked to be moved but because he refused to tell staff the names of the inmates that were assaulting him, he was not moved.  He was assaulted on April 4, 2007 by two inmates and his lower jaw was broken.  He contends that staff refused to have his jaw x-rayed and he was refused medical treatment.  He alleges that after 32 days of starvation and suffering he was transferred to MSP where x-rays confirmed he had a broken jaw.  (Second Amd. Cmplt., Doc. 9 at 2-4.)

On March 24, 2015, Mr. Riggs was transferred back to CCC from MSP. When interviewed regarding housing he told Case Manager Gold that he was concerned for his safety if he were housed on D-wing or in C-pod.  Mr. Riggs was initially housed on A-pod and then moved to E-pod.  One week later, however, Unit Manager Wandler informed Mr. Riggs that he either had to move to C-pod or

face disciplinary action.  On April 2, 2015, Mr. Riggs was moved to restricted housing and was given a major write-up for refusing a direct order.  He was found guilty and given 30 days disciplinary detention.  (Second Amd. Cmplt., Doc. 9 at 4-5.)

On April 7, 2015, a segregation review was held and attended by Warden Berkebile, U/M Wandler, Security Chief Bussby, Lt. Weaver, C/M Gold and U/M Christians.  Mr. Riggs explained the incidents in 2007 and expressed his concern for his safety.  A second review was held on April 14, 2015.  (Second Amd. Cmplt., Doc. 9 at 5.)

Additional reviews were held on April 21 and April 28, 2015 which were attended by Chief Stewart, DOC monitor Ms. Kenyon, and the staff who attended the April 7, 2015 review.  At all reviews, Mr. Riggs pled his concerns for his safety.  Despite these pleas, Mr. Riggs was ordered to be housed on C-pod.  He was told that if he refused he would be written up every seven days until his classification points were max points.  He was also told that staff would take all his bedding from 6:00 a.m. to 10:00 p.m. each days.  (Second Amd. Cmplt., Doc. 9 at 6.)

Mr. Riggs wrote a notification dated April 28, 2015 putting CCC staff on notice of the danger to his person.  He was then moved to C-pod and was

subjected to several threats and harassments over the next few months.  He alleges he was also extorted out of hundreds of dollars for protection.  In November 2015 he ran out of money.  On November 17, 2015, inmates obtained information regarding Mr. Riggs's crimes and he was told by other inmates to leave the block or suffer assault.  He spoke with Defendants Chistians and Mohart and told them of the threats.  He was assaulted at 4:30 p.m. on November 17, 2015.  (Second Amd. Cmplt., Doc. 9 at 6-8.)

Mr. Riggs was taken to Shelby's local hospital after the assault.  He suffered a major concussion, brain trauma, optic/retina damages to his left eye, two broken teeth, and many bruises.  He was moved to CCC's infirmary for two days.  On November 18, 2015, Dr. Berdecia wanted to order a cat scan but Assistant Warden Powell talked him out of doing so.  Mr. Riggs contends that he has not been treated for his injuries.  He was held in restricted housing thereafter and transferred to MSP 40 days later.  (Second Amd. Cmplt., Doc. 9 at 9.)

### C.    Allegations

Mr. Riggs brings his claims under the Eighth Amendment to the United States Constitution alleging Defendants were deliberately indifferent to his safety and denied him medical care in April 2007 and November 2015.  He also brings claims of malpractice, negligence, and gross negligence under Montana state law

5

and alleges violations of criminal law.  (Second Amd. Cmplt., Doc. 9 at 10-14.)

## II.    ANALYSIS

### A.  Statute of Limitations

As set forth in the Court's prior Order, the United States Supreme Court in *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), determined the applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions.  In Montana, that period is three years after the action accrues.  *Mont. Code. Ann.* § 27-2-204(1).

As such, the Court previously determined that Mr. Riggs's claims regarding the April 2007 incidents are barred by the applicable statute of limitations. Pursuant to federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004).  Clearly, Mr. Riggs was aware of his injury in 2007 when it occurred.  He argues in his Second Amended Complaint that the alleged incidents are related closely enough to the 2015 incidents as to constitute a continuing violation.  He argues that his injuries from 2007 are ongoing due to the denial of medical care for his jaw and because Defendants failed to protect him again in 2015.  (Doc. 9 at 10-11.)

6

For continuing violations, the statute of limitations does not begin to run until the violation or series of violations ends. *Green v. L.A. County Superintendent of Sch.*, 883 F.2d 1472, 1480-81 (9th Cir.1989). The theory of continuing violations is an equitable doctrine that "prevent[s] a defendant from using its earlier conduct to avoid liability for later illegal conduct of the same sort." *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000).

To establish a continuing violation, Mr. Riggs's must show " 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " *Green*, 883 F.2d at 1480 (*quoting Valentino v. U.S. Postal Serv.*, 674 F.2d 56, 65 (D.D.C. 1982)). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (*citing Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975)); *see also Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). "Mere 'continuing impact from past violations is not actionable.'" *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) (*quoting Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 769 (9th Cir. 1980)).

Mr. Riggs argues that his jaw was broken as a result of the April 2007 assault and thereafter Defendants were deliberately indifferent to his injuries. He

7

alleges Defendants' failure to treat the injury constitutes deliberate indifference to his medical needs. But Mr. Riggs was from transferred from Crossroads to Montana State Prison approximately 32 days after the alleged April 2007 assault. His allegations of deliberate indifference all relate to the events in April 2007 when he was in Crossroads' custody. Just because he was returned to Crossroads eight years later does not establish a continuing violation. There is no allegation of unlawful acts committed by the Defendants named herein between 2007 and 2015 when Mr. Riggs was returned to Crossroads.

There is no basis to toll the statute of limitations on the April 2007 incidents based upon the continuing violation theory. Mr. Riggs's claims arising from the April 2007 are time barred by the applicable three year statute of limitations and should be dismissed. In addition, the Defendants named with regard to the 2007 incident including Defendants Stercheo, McDonald, Law, Bear, McDuna, Vantine, Mertz, Seg. RN's, Seg. Doctor, and Seg. C/O's should be dismissed.

**B. Failure to Protect**

As set forth above, Mr. Riggs's allegations that Defendants Berkebile, Wandler, Bussby, Weaver, Gold, Christians, Stewart, Kenyon, Mohart, and Fender were deliberately indifferent when they ignored and disregarded his pleas for safety and protection from assault, threats, and extortion are sufficient to state a

claim of deliberate indifference to an inmate's safety.  Similarly, his allegations against CCA and CCC for having a custom, policy, or practice of failing to protect sex offenders such as Mr. Riggs are sufficient to state a claim.  These Defendants will be required to respond to these claims.

### C.  Denial of Medical Care

In it's prior Order, the Court analyzed Mr. Riggs's denial of medical care claims arising after the November 2015 incident.  In his Second Amended Complaint, Mr. Riggs alleges that after the assault on November 17, 2015 he was admitted into Crossroads' infirmary and then taken to the local hospital.  He alleges he suffered a major concussion, brain trauma, optic/retina damage to his left eye, two broken teeth, and many bruises.  Mr. Riggs was then housed in Crossroads' infirmary for two days to be monitored by staff.  On November 18, 2015, Mr. Riggs was seen by Dr. Berdecia who wanted to order a cat scan due to a concern over brain trauma and the injury to Mr. Riggs's left eye.  Associate Warden Powell was in the room and allegedly talked Dr. Berdecia out of ordering the scan.  Mr. Riggs alleges Dr. Berdecia quit that same day.  Mr. Riggs was locked in Crossroads' RHU unit for more than 40 days thereafter and then transferred back to MSP.  (Second Amended Complaint, Doc. 9 at 8-9).

Mr. Riggs alleges that to date he has not been treated for his injuries despite

many medical kites requesting treatment.  But the only factual allegation made against any specific defendants is that Defendant Powell allegedly talked Dr. Berdecia out of ordering a cat scan.  Dr. Berdecia quit the day after the assault on Mr. Riggs.  As such, the Court sees no basis for liability against Dr. Berdecia.

However, prison officials may demonstrate deliberate indifference by denying, delaying, or intentionally interfering with medical treatment, or by the manner in which they provide medical treatment.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).  The Court finds that Mr. Riggs's allegation that Defendant Powell intentionally interfered with Dr. Berdecia's medical treatment is sufficient to state a claim for relief.  Defendant Powell will be required to respond to the medical care claims under federal and state law.

Mr. Riggs also makes general allegations against unnamed defendants such as CCA Dentist and CCA Medical staff.  The use of John Doe defendants is generally not favored in federal court.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  The claims against the unnamed defendants will be dismissed without prejudice.  Mr. Riggs will be afforded an opportunity, however, to identify the unknown defendants through discovery.  *Id.*  Should he learn the identities of the unnamed defendants in the future, he may file a Third Amended Complaint to

10

add the identified persons as defendants.

### D.  Malpractice

For the reasons set forth in the Court's prior Order Mr. Riggs's state law malpractice claims should also be dismissed.  Mont. Code Ann defines a malpractice claim as:  "a claim or potential claim of a claimant against a health care provider for medical or dental treatment, lack of medical or dental treatment, or other alleged departure from accepted standards of health care that proximately results in damage to the claimant, whether the claimant's claim or potential claim sounds in tort or contract, and includes but is not limited to allegations of battery or wrongful death."  Mont. Code Ann. § 27-6-103(5).  A health care provider is defined as "a physician, a dentist, a podiatrist, or a health care facility."  Mont. Code Ann. § 27-6-103(3).  As set forth above, there is no basis for liability against Dr. Berdecia.  Mr. Riggs's medical malpractice claims should be dismissed.

### E.  Criminal Claims

As set forth in the Court's prior Order, the Fifth Amendment to the United States Constitution provides:  "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.  As such, Mr. Riggs cannot succeed in a Section 1983 civil rights action that seeks to institute criminal proceedings against any defendant.

11

*See Walker v. Hedgpeth*, No. C 09-05055, 2009 U.S. Dist. LEXIS 119563, **2-3, 2009 WL 4676227 (N.D. Cal. Dec. 8, 2009) (dismissing a "criminal complaint," construed as a civil rights complaint under 42 U.S.C. § 1983, as frivolous).  These claims will be recommended for dismissal.

## III.  CONCLUSION

The Court has considered whether Mr. Riggs's Second Amended Complaint (Doc. 9) is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  The Court concludes dismissal of Mr. Riggs's claims against Defendants Berkebile, Wandler, Bussby, Weaver, Gold, Christians, Stewart, Kenyon, Fender, Mohart, and CCA, Crossroads Facility is not appropriate at this time.  The Court will require these Defendants to make an appearance on Mr. Riggs's failure to protect and negligence claims arising from the November 2015 assault.

In addition, Assistant Warden Powell must respond to Mr. Riggs's denial of medical care and negligence claims raised against him in the Second Amended Complaint.

Mr. Riggs has failed to correct the deficiencies with regard to his claims arising in 2007, his denial of medical care claim against Dr. Berdecia, his medical malpractice claims, and his violation of criminal law claims.  Those claims and

12

Defendants Stercheo, McDonald, Law, Bear, McDuna, Vantine, Mertz, Sge. RN's, Seg. Doctor, and Seg. C/O's should be dismissed.

Based on the foregoing, the Court issues the following:

## ORDER

1.  Within 21 days of service of this Order, Defendants Berkebile, Wandler, Bussby, Weaver, Gold, Christians, Stewart, Kenyon, Fender, Mohart, and CCA, Crossroads Facility shall file a responsive pleading to Mr. Riggs's failure to protect and negligence claims arising from the November 2015 incident. Defendant Powell shall file a responsive pleading to Mr. Riggs's denial of medical care and negligence claims.

2.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

3.  Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

4.  At all times during the pendency of this action, Mr. Riggs must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Riggs's claims arising from the alleged assault and denial of medical care in 2007 are barred by the applicable statute of limitations and should be DISMISSED.

2.  Mr. Riggs claims of medical malpractice and alleged violations of criminal law should be DISMISSED.

3.  Defendants Berdecia, Stercheo, McDonald, Law, Bear, McDuna, Vantine, Mertz, Sge. RN's, Seg. Doctor, Seg. C/O's, and all John Doe/unnamed defendant should be dismissed.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Riggs may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C)

14

timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 22nd day of January, 2018.


     */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

(mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Riggs is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.