# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| ROBERT D. RIGGS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>WARDEN BERKEBILE, *et al.*,<br><br>　　　　　　Defendants. | CV 16-92-GF-BMM-JTJ<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS |

## INTRODUCTION

United States Magistrate Judge John Johnston entered Findings and Recommendations on August 7, 2019. (Doc. 76.) Judge Johnston recommends that the Court dismiss Defendant Powell and dismiss without prejudice Defendant Stewart. (Doc. 76 at 33.) Judge Johnston further recommends that the Court deny Defendant Alstad's Motion for Summary Judgment (Doc. 58) and deny the Motion for Summary Judgment filed collectively by Defendants CoreCivic, Crossroads, Berkebile, Wandler, Busby, Weaver, Gold, Christians, Stewart, Fender, Morhardt, and Powell (collectively, "CoreCivic Defendants") (Doc. 62). (Doc. 76 at 33-34.)

1

## BACKGROUND

Plaintiff Robert Riggs ("Riggs"), a state prisoner proceeding without counsel and in forma pauperis, initiated this action by submitting a Complaint and an affidavit of inability to pay filing fees in Toole County on July 27, 2015. (State Court Case Register, Doc. 5; State Court Complaint, Doc. 6.) Riggs alleged claims against Corrections Corporation of America (n/k/a and referred to herein as "CoreCivic") and a number of employees at Crossroads Correctional Facility ("Crossroads") arising from an incident that occurred in 2007. (*Id.*) Riggs later filed an amended complaint in state court raising additional claims of failure to protect and denial of medical care arising from incidents in 2007 and 2015. (Doc. 7.) Defendants CoreCivic and Crossroads removed the case to federal court on August 16, 2016. (Doc. 1.) Riggs filed a Second Amended Complaint on July 5, 2017. (Doc. 9.)

This Court dismissed Riggs's claims arising from the 2007 incident on April 16, 2018. (Doc. 23.) Riggs's claims arising from the 2015 incident remain. Defendant Alstad filed a motion for summary judgment on March 21, 2019. (Doc. 58.) CoreCivic Defendants filed a motion for summary judgment on March 29, 2019. (Doc. 62.)

Judge Johnston issued Findings and Recommendations on August 7, 2019. (Doc. 76.) Riggs failed to serve Defendant Stewart. (Doc. 45, USM 285 Return—summons returned unexecuted.) Judge Johnston recommends that Defendant Stewart be dismissed without prejudice for failure to serve pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Doc. 76 at 3, 33.)

Riggs concedes that the Court should dismiss Defendant Powell. (Doc. 73 at 2.) Judge Johnston recommends that Defendant Powell be dismissed pursuant to Riggs's concession that dismissal is appropriate. (Doc. 76 at 33.)

Riggs's remaining claims are his failure to protect claim and his negligence claim against CoreCivic Defendants and Alstad arising out of an incident that occurred on November 17, 2015. (Doc. 76 at 3.) The Court already dismissed Riggs's claims arising in 2007 (Doc. 23), but the factual basis of those claims provides context for Riggs's 2015 claims. Riggs alleges that he was assaulted by "the white boys" several times while he was housed in C-Pod at Crossroads in 2007. (Doc. 9 at 2; Riggs's Statement of Disputed and Undisputed Facts, Doc. 74 (hereinafter "SDF") at 2, ¶ 3.) Riggs claims that he repeatedly asked the staff at Crossroads to move him, but that staff refused because Riggs would not reveal which inmates were assaulting him. Two inmates assaulted Riggs on April 4, 2007.

3

Riggs suffered from a broken jaw. Officials eventually transferred Riggs to Montana State Prison. (Doc. 9 at 2-4.)

The Montana Department of Corrections (DOC) transferred Riggs back to Crossroads on March 24, 2015. (CoreCivic Defendants' Statement of Undisputed Facts, Doc. 65 (hereinafter "SUF") at ¶ 7.) Riggs told Defendant Gold that Riggs did not want to be housed in D-Wing or in C-Pod due to concerns for his safety. Riggs claims that Gold acknowledged the threat to Riggs's safety and placed him in A-Pod overnight. (Doc. 9 at 4; Doc. 74-1 at 8.) Crossroads then moved Riggs to E-Pod the next morning, which is for low- to medium-custody offenders. (SUF at ¶ 8.)

Riggs spoke with Defendant Wandler on April 2, 2015. Wandler questioned why Riggs, a close-custody inmate at the highest custody level in the general prison population, was housed in E-Pod. (SUF at ¶ 9.) Riggs claims that he told Wandler that he was concerned for his safety in C-Pod. Riggs believed that he would be assaulted by the same group of inmates who had assaulted him in 2007. (SDF at ¶ 3.)

Wandler asked Riggs questions to determine whether a current need existed for separation from inmates in C-Pod. (SUF at ¶ 10.) Riggs told Wandler that Inmate Willis had assaulted him in 2007. Wandler informed Riggs that Inmate

4

Willis was no longer at Crossroads. Riggs stated that he did not want to provide the names of the inmates who assaulted him in 2007, but then identified two other inmates, "Blinky" and "Cheeseburger." Wandler recognized those nicknames as belonging to Inmate Kauffman and Inmate Hale. Wandler testified that she confirmed those individuals were no longer at Crossroads. (SUF at ¶ 11.) Riggs disputes that information and testified that Inmate Hale lived in C-Pod in 2015. (SDF at ¶ 3, Riggs Aff., Doc. 74-1 at 9, ¶ 6.)

Wandler testified that Riggs also suggested that he would have issues with Inmate Lamere and Inmate Conley, as well as other natives and whites, but that Riggs did not provide any other specific information regarding whom he feared or who had threatened him. Wandler testified that she confirmed that Inmate Lamere and Inmate Conley were not housed in C-Pod. (SUF at ¶ 11.) Riggs disputes that information and asserts that Inmate Lamere and Inmate Conley were both living in C-Pod at the time. (SDF at ¶ 5, Riggs. Aff., Doc. 74-1 at 9, ¶ 6.) Riggs asserts that he told Defendants that the whites, natives, and Sureños were a serious risk to his safety if he lived in C-Pod. (SDF at ¶ 10.)

Wandler told Riggs that he would need to be housed in C-Pod due to his close-custody status. Riggs refused and was written up and found guilty of violating a direct order. Riggs was sanctioned to 30 days disciplinary detention in

the Restricted Housing Unit ("RHU") where he was housed until April 28, 2015. (Doc. 9 at 5; SUF at ¶ 18.)

Riggs participated in segregation reviews with Wandler and other prison officials while he was in the RHU. Defendants represent that at these segregation reviews, Riggs stated a general concern for his safety in C-Pod, but did not provide any additional or corroborating information. (SUF at ¶ 19; Alstad Aff., Doc. 60-1 at ¶¶ 17-21; Wandler Aff., Doc. 66 at ¶ 22.) Riggs represents that at the segregation review on April 7, 2015, which was attended by Defendants Berkebile, Wandler, Busby, Weaver, Gold, and Christians, Riggs detailed the incidents that had occurred in 2007 and expressed a concern for his safety. (Doc. 9 at 5-6.) Additional segregation reviews occurred on April 14, 2015, April 21, 2015, and April 28, 2015. Riggs asserts that Defendant Stewart, Defendant Alstad, and the staff who attended the April 7, 2015 segregation review attended those additional segregation reviews. (*Id.*)

Riggs testified that he told Defendants Wandler, Weaver, Berkebile, Gold, Christians, Busby, Fender, and Alstad several times that Inmate Hale had perpetrated assaults on Riggs in 2007 and that Inmate Hale currently lived in C-Pod. Riggs testified that he told Defendants several times that he would be assaulted by multiple people in C-Pod because of his status as a sex offender.

6

Riggs testified that he provided Defendants with the names and identified groups of inmates who threatened his safety and currently lived in C-Pod. (Riggs Aff., Doc. 74-1 at 9, ¶ 11, 12.)

Riggs alleges that he told Defendants that it was common knowledge that all sex offenders who lived in C-Pod were the target of violence. (SUF at 3, ¶ 11.) Riggs personally had witnessed inmates convicted of sex offenses moved from C-Pod for safety reasons. Riggs also had witnessed Crossroads staff write up sex offenders and force them to live in C-Pod where they were the target of violence. (Riggs Aff., Doc. 74-1 at 9, ¶ 10.) Defendants ultimately housed Riggs in C-Pod.

Prison officials moved Riggs from the RHU to C-Pod on April 29, 2015, where he was housed until November 17, 2015. (SUF at ¶ 20.) Riggs testified that he was subjected to threats and harassment while he lived in C-Pod. Riggs testified that he paid hundreds of dollars for protection, but ran out of money in November 2015. (Doc. 9 at 7.)

Riggs testified that he spoke to Defendants Christians and Berkebile several times between May 2015 and November 2015 about concerns for his safety. (Riggs Aff., Doc. 74-1 at 10, ¶¶ 14-15.) Riggs testified that Christians told him that she would move him from C-Pod, but never did, and that Berkebile always responded, "I'll look into it," but never did. (Riggs Aff., Doc. 74-1 at 10, ¶¶ 14-15.) Riggs's

7

cellmate Inmate James Pool and Inmate Simon Jacobsen moved from C-Pod in November 2015. Riggs testified that, thereafter, he was under constant threat of assault and spoke to Christians several times. Riggs testified that Christians promised to move him from C-Pod, but never did. (*Id.* at ¶ 16.)

Riggs testified that Inmate Gogg, a known white supremacist who had just been disciplined for assaulting a sex offender, was moved into Riggs's cell on November 16, 2015. (SDF at ¶ 17; Riggs Aff., Doc. 74-1 at 11, ¶ 11.) Riggs testified that inmates in "said group" went to the library and pulled Riggs's case off Nexis/Lexis on November 17, 2015. Riggs testified that he told Christians about threats on November 16, 2015, and November 17, 2015, and that she told him to "deal with it." (Riggs Aff., Doc. 74-1 at 11, ¶ 19.)

Riggs was assaulted in his cell by Inmate English and Inmate Devine on November 17, 2015, at approximately 4:30 p.m. Prison staff also identified Inmate Wassmer as a participant in the assault. Riggs had never before specifically identified those inmates as posing a threat to him or as persons from which he required separation. Wandler testified that she was not aware of any facts prior to the November 17, 2015, assault from which she could have determined Riggs had a need for separation from Inmates Wassmer, Devine, or English. (SUF at ¶ 21.)

Riggs filed his Second Amended Complaint in this case on July 5, 2017. (Doc. 9.) Riggs's remaining claims allege Eighth Amendment Failure to Protect and Negligence. (Docs. 9 at 11-16 & 76 at 3.) Defendants moved for summary judgment. (Docs. 58 & 62.) Judge Johnston issued Findings and Recommendations on August 7, 2019. (Doc. 76.) Judge Johnston that found genuine disputes of material facts existed regarding the merits of Riggs's claims. (Doc. 76 at 3.) Judge Johnston recommends that the Court deny Defendant Alstad's motion for summary judgment (Doc. 58). (Doc. 76 at 33.) Judge Johnston further recommends that the Court deny CoreCivic Defendants' motion for summary judgment (Doc. 62). (Doc. 76 at 34.)

## DISCUSSION

The Court reviews de novo Findings and Recommendations timely objected to. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which no party specifically objects. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

I. **Alstad's Objections**

Alstad objects to Judge Johnston's recommendation that the Court deny Alstad's motion for summary judgment. (Doc. 77 at 1.) CoreCivic owns and

operates Crossroads prison facility within the State of Montana. (Doc. 60 at ¶ 3.) The DOC employs Alstad as a Contract Monitor at Crossroads. (Doc. 60 at ¶ 2.) Alstad monitors Crossroads for compliance with the terms of the contract that allows CoreCivic to operate a private prison facility in Montana. (Doc. 60 at ¶ 4.) Alstad began working as a Contract Monitor in January 2015. (Doc. 60 at ¶ 9.) Alstad's immediate supervisor serves in Deer Lodge, Montana. (*Id.*) Neither CoreCivic nor Crossroads employs Alstad. (*Id.* at ¶ 5.)

Alstad testified that she does not have supervisory or disciplinary authority over Crossroads staff members. (Doc. 60 at ¶ 6.) Alstad testified that she does not have the authority to transfer an inmate from Crossroads, change an inmate's classification at Crossroads, or assign an inmate to different housing at Crossroads. (Doc. 60 at ¶ 7.) Alstad testified that she was not aware of Riggs's alleged assault at Crossroads in 2007 during the segregation reviews in April 2015. (Doc. 60 at ¶ 10.)

Alstad testified that she attended one or two of the segregation reviews mentioned in Riggs's complaint. (Doc. 60 at ¶ 12.) Alstad testified that, as Contract Monitor, her attendance at a segregation review is optional because the decision as to whether to grant or deny a separation request presents a security decision left entirely to Crossroads security staff. (Doc. 60 at ¶ 14.) When the Contract Monitor

10

attends a segregation review, he or she attends only to ensure that Crossroads is housing the inmate appropriately. (Doc. 60 at ¶ 15.)

Alstad testified that, viewing Riggs's situation purely from a housing standpoint, she determined that Crossroads had complied with the policy of housing Riggs, a close-custody inmate, in C-Pod. (Doc. 60 at ¶ 21.) Alstad determined that Crossroads followed the Contract as it related to Riggs's housing. (Doc. 60 at ¶ 22.) Alstad testified that she made no determinations regarding Crossroad's decision to deny Riggs's separation request. (Doc. 60 at ¶ 23.) Alstad testified that she did not interact with Riggs between the time of his segregation reviews and the time that he was assaulted. (Doc. 60 at ¶ 24.)

**A. Qualified Immunity**

In her motion for summary judgment, Alstad argued that she was entitled to qualified immunity. (Doc. 59.) Alstad objects to Judge Johnston's finding that Alstad is not entitled to qualified immunity. (Doc. 77 at 6.) Alstad notes that Judge Johnston mentioned qualified immunity only once, when he concluded that genuine issues of material fact exist regarding Riggs's Eighth Amendment claims, that prison officials had a duty to protect inmates from a risk of attack, and that, "[a]s such, Defendant Alstad is not entitled to qualified immunity." (Doc 77 at 5-6 (citing Doc. 76 at 24-25).)

Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (*citing Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). To be clearly established, "a right must be sufficiently clear that every reasonable official would have understood what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The rule must be clear enough that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). A defendant can violate a clearly established right only if "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Ricard*, 134 S. Ct. 2012, 2023 (2014). The "clearly established" standard requires a high degree of specificity. *Wesby*, 583 U.S. at 590.

Alstad argues that Judge Johnston erred by finding that the contours of the right in question were not sufficiently defined at the time of the alleged acts. (Doc. 77 at 7.) Alstad asserts that, in order for the right at issue to be clearly established, there would have had to have been a factually-similar case involving a state-employed contract monitor responsible for overseeing compliance with the contract that allows a private corporation to operate a private prison. (Doc. 77 at

13.) Alstad argues that, because no similar precedent existed when the alleged acts occurred, she had no way to know that her actions were potentially unconstitutional. (Doc. 77 at 9-11.) The Court disagrees.

Riggs alleges that Alstad violated his Eighth Amendment rights because she failed to protect him from being assaulted by other inmates. Although there do not appear to be any other cases with facts exactly like this one, any reasonable official in Alstad's shoes would have understood that she was violating Riggs's Eighth Amendment right if the facts that Riggs's alleges prove true.

Riggs has alleged that he was assaulted in 2007, and that the person who directed the 2007 assault lived in C-Pod in 2015. Riggs has further alleged that he told prison officials, including Alstad, about the past assaults and that he feared for his safety. Riggs alleges that Alstad was fully aware of the danger that being housed in C-Pod posed to Riggs. Alstad contests these facts and asserts that the undisputed facts demonstrate that she had no way to understand that she was violating Riggs's Eighth Amendment rights.

The Court must construe these facts in the light most favorable to Riggs. *See Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011) (stating that a court must draw "all inferences supported by the evidence in favor of the non-moving party"). The Court concludes that any reasonable official in Alstad's

13

shoes would have understood that she was violating Riggs's Eighth Amendment rights by failing to protect him from being assaulted by other inmates. Summary judgment in Alstad's favor regarding Riggs's Eighth Amendment claim must be denied.

**B. Alstad's Knowledge**

Alstad further objects to Judge Johnston's Findings and Recommendations on the basis that Judge Johnston impermissibly imputed knowledge to Alstad to support his finding that genuine issues of material fact existed. (Doc. 77 at 14.) To state a claim for failure to protect, Riggs must allege facts to support that he was incarcerated under conditions posing substantial risk of harm and that Alstad was "deliberately indifferent" to those risks. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Alstad acted with deliberate indifference if she knew of, and then disregarded, an excessive risk to Riggs's safety. *See id.* at 837. Riggs must show that (1) Alstad was aware of the facts from which she could have drawn an inference that a substantial risk of serious harm existed; and (2) Alstad drew the inference. *See id.*

Genuine issues of material fact exist as to Alstad's factual knowledge and whether she drew an inference that a substantial risk of harm existed. Alstad asserts she could not have known about the risk of harm because she was a new

employee when the segregation reviews occurred in April 2015, and because she did not interact with Riggs between the segregation reviews and the assault in November 2015. (Doc. 77 at 15-16.) Alstad also asserts that, in her role as Contract Monitor, she did not have any authority over inmate housing decisions. (Doc. 77 at 16-17.)

Riggs has alleged, however, that he discussed his safety concerns with prison officials, including Alstad, at his segregation reviews. (Doc. 9 at 5-6.) What information Alstad learned at the segregation review(s), how that information informed Alstad's inferences regarding Riggs's safety, and whether Alstad had any authority to resolve Riggs's safety concerns in her role as Contract Monitor, present material factual issues for the trier of fact to resolve. These genuine issues of material fact defeat Alstad's motion for summary judgment based on her reported lack of knowledge.

## II. Expert Witness Testimony to Prove Negligence

Both Alstad and CoreCivic Defendants object to Judge Johnston's conclusion that Riggs did not need to present expert testimony to support his negligence claim. (Docs. 77 at 19 & 78 at 4.) A party must present expert testimony to establish the standard of care "unless the conduct complained of is readily ascertainable by a layman." *Brookins v. Mote*, 292 P.3d 347 (Mont. 2012).

15

The Montana Supreme Court requires expert testimony "when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Dayberry v. City of East Helena*, 80 P.3d 1218, 1220-21 (Mont. 2003).

This Court addressed a similar issue in *Hall v. Kirkegard*, 2017 WL 8787176, **13-14 (D. Mont. July 31, 2017), *adopted in full by* 2018 WL 747375. This Court determined in *Hall* that a prisoner's challenge to the propriety of a prison's housing policies, the policies and practices for selecting housing assignments for inmates, the rationale for dealing with certain inmates, the implementation certain programs, the movement of inmates, and the investigation of various issues were outside the common understanding of the jurors. *Id.*

This Court also stated in *Hall*, however, that "[s]ome negligence claims against prison officials may not require expert testimony." *Hall*, 2017 WL 8787176, *14. Riggs's negligence claim in this case proves to be one that does not require expert testimony. *Hall* is distinguishable because here Riggs does not challenge the propriety of general prison policies or practices. Riggs instead, has, presented specific evidence that he was assaulted in 2007, that the inmate who ordered the 2007 assault was housed in C-Pod in 2015, that Riggs repeatedly

16

notified Defendants of the danger, and that Defendants were aware of the dangers faced by sex offenders housed in C-Pod.

A layman readily could ascertain the danger inherent in the conditions alleged by Riggs. A common person could understand that Riggs was assaulted in 2007 and that Riggs believed the person who ordered the 2007 assault was housed in C-Pod in 2015. A common person could further understand that Riggs notified the Defendants of the danger and that the Defendants were aware of the danger to sex offenders in C-Pod. A common person could determine whether Defendants acted negligently in response to Riggs's concerns. Expert witness testimony is not required. Neither Alstad nor the CoreCivic Defendants are entitled to summary judgment on Riggs's negligence claims.

### III. CoreCivic Defendant's Additional Objections

CoreCivic Defendants conclude their objections to Judge Johnston's Findings and Recommendations by generally alleging that Judge Johnston erred by denying their motion for summary judgment. (Doc. 78 at 10-12.) Where a party's objections constitute perfunctory responses argued in an attempt to engage the district court in a reargument of the same arguments set forth in the original response the Court will review the applicable portions of the findings and

17

recommendations for clear error. *Rosling v. Kirkegard*, 2014 WL 693315 *3 (D. Mont. Feb. 21, 2014) (internal citations omitted). The Court finds no error.

CoreCivic Defendants request that they be allowed additional discovery if the Court denies their summary judgment motion. (Doc. 78 at 12.) CoreCivic Defendants assert that they are entitled to additional discovery because the case Riggs presented in previous discovery "is very different than the one he has created for the purposes of summary judgment" and because Riggs raised new factual allegations in response to CoreCivic Defendants' summary judgment motion regarding Inmate Middlemiss and Inmate Hallberg (*Id.*) The Court finds that a ruling regarding additional discovery proves currently premature because CoreCivic Defendants made the request before they received this Order and have not identified why additional discovery regarding Inmate Middlemiss and Inmate Hallberg proves necessary. CoreCivic Defendants may separately move for additional discovery should they still find it necessary following this Order.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Judge Johnston's Findings and Recommendations (Doc. 76) are **ADOPTED IN FULL**.

2. Defendant Stewart is **DISMISSED WITHOUT PREJUDICE** for failure to serve pursuant to Fed. R. Civ. P. 4.

3. Defendant Powell is **DISMISSED** pursuant to Riggs's concession that dismissal is appropriate.

4. Defendant Alstad's Motion for Summary Judgment (Doc. 58) is **DENIED**.

5. Defendants CoreCivic, Crossroads, Berkebile, Wandler, Weaver, Gold, Fender, and Mohart's Motion for Summary Judgment (Doc. 62) is **DENIED**.

DATED this 17th day of December, 2018.

_____
Brian Morris
United States District Court Judge